In the case of M. E. Anderson et al. v. John R. Brandon et al., No. 5821 this day decided by the Supreme Court, post., 47 S. W. (2d) 261, it was determined that section 1 of article 10 of the Dallas city charter, supra, is valid and constitutional. In the case mentioned the constitutional questions involved are fully discussed, and no good purpose can be served by a further discussion here. Upon the authority of that case the judgment of the Court of Civil Appeals should be affirmed.

## M. E. ANDERSON ET AL. V. JOHN R. BRANDON.

No. 5821. Decided March 2, 1932.
(47 S. W., 2d Series, 261.)

*Geo. F. Burgess, John C. Read, Church, Read & Bane* and *R. J. Dixon,* all of Dallas, for plaintiffs in error.

The provision in the city charter providing that the lien securing the paving assessment should become fixed and take effect as of the date of the passage of the resolution ordering the street paved, is unconstitutional and void as being contrary to the provisions of the Constitution of the State of Texas.

Plaintiffs in error's lien did not take effect as to other outstanding lien holders until the filing of the contract mechanic's lien or the passing of the ordinance levying the paving assessment.

The lien securing a paving assessment does not take effect as to other lien holders until after the completion of the paving in question and the passage of the ordinances levying the assessment. Constitution of the State of Texas, art. 16, sec. 50; State Trust Company v. Morrison, 282 S. W., 214; Creosoted

Wood Block Paving Co. v. McKay, 211 S. W., 822; title 115, chapters 1 to 5 inclusive, article 6591 to 6662 Vernon's Annotated Texas Civil Statutes; section 5, article 11 of the Constitution of the State of Texas; article 1011 of the Revised Statutes; section 56, article 3 of the Constitution of the State of Texas; Altgelt v. Gutzeit, 109 Texas, 123; King v. State, 289 S. W., 69 and 70; Vincent v. State, 235 S. W., 1084; Smith Bros. v. Lucas, 15 S. W. (2d) 27.

W. H. Graham, of Houston, for defendants in error.

There being no proof in this case that the property involved in this suit was the homestead of any one on July 18th, 1924, the date on which the City of Dallas passed a resolution originally ordering the improvement of said street, plaintiffs in error were entitled to a foreclosure of the statutory lien asserted by it as being created by the assessing ordinance passed by the City of Dallas and evidenced by the special assessment certificate sued on, as against the defendants in error in view of the provisions of section (i) of article 10 of the charter of the City of Dallas, and the fact that M. E. Anderson acquired title to said property after July 18th, 1924, and made the property his homestead, if he did do so, cannot affect the right of plaintiffs in error to their statutory lien securing the payment of the obligation sued on. Smith Brothers v. Lucas, 15 S. W. (2d) 27; Nalle v. Eaves, 5 S. W. (2d) 500.; Farmers State Bank of Burkburnett v. McReynolds, 1 S. W. (2d) 322.; Storrie v. Houston City Street Ry. Co., 92 Texas, 129, 46 S. W., 796.

MR. JUSTICE PIERSON delivered the opinion of the court.

In the application for writ of error the question presented for determination is thus stated:

"There is but one question involved in this suit; that is, whether the provision of the Charter of the City of Dallas, providing that the lien of any assessment shall relate back and become effective as of the date of the resolution ordering the paving, is constitutional. If it is, then the lien of the plaintiffs in error dates from the 18th day of July, 1924, prior to the time when Anderson established his homestead upon the property. If it is not, then the defendants in error have no lien because at the time of the passage of the ordinance of assessment on June 24, 1925, the property was the homestead of Anderson and wife, and not subject thereto."

Any further statement of the case is rendered unnecessary

by the clear and succinct manner in which plaintiffs in error have stated the question for decision.

Plaintiffs in error challenge the constitutionality of article X, section 1, subdivision (i), of the Dallas charter, which provides:

"The lien of such assessment shall revert back and take effect as of date of the original resolution ordering the improvements and the passage of such resolution shall operate as notice of such lien to all persons."

■ It. is urged that this provision is in contravention of section 56, article III, of the Constitution, which reads as follows:

"The Legislature shall not, except as otherwise provided in this constitution, pass any local or special law authorizing:

"The creation, extension, or impairment of liens."

We are unable to concur in the view that this provision of the Dallas charter runs counter to the above quoted section of the Constitution of this state.

■ Prior to the adoption of the Home Rule Amendment to the Constitution in 1912, the Legislature was authorized by special law to grant or amend the charters of cities having more than 5,000 inhabitants. Article XI, section 5, State Constitution. In order to obviate the necessity of such cities coming to the Legislature whenever any change was desired in their charters, and in order to facilitate self-government in said cities, the Home Rule Amendment to the Constitution was adopted. Said Home Rule Amendment in part provides:

"Cities having more than 5,000 inhabitants may, by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their charters subject to such limitations as may be prescribed by the Legislature, and provided that no charter or any ordinance passed under said charter shall contain any provision *inconsistent with the Constitution of the State or of the general laws enacted by the Legislature of this State*."

■ Some states permit their cities of a certain class to adopt or amend their charters entirely free from legislative control. The people of Texas, however, in adopting the Home Rule Amendment, reserved the power to the Legislature by general law to make provisions regulating such cities. The purpose was to permit cities of the class named to legislate upon any subject for themselves, so long as such legislation did not infringe upon legislative enactment or the provisions of the State Constitution. City of Beaumont v. Fall, 116 Texas, 314. The Home

Rule Amendment to the Constitution provides that cities may adopt or amend their charters "subject to such limitations as may be prescribed by the Legislature," and that their charters and ordinances shall not be "inconsistent with the general laws enacted by the Legislature in this state."

■ In the exercise of the powers so withheld, the Legislature, in conformity to said Home Rule Amendment, enacted legislation enumerating certain powers which might be exercised by such cities. These powers are contained in article 1175, Revised statutes, 1925. Section 16 of said article, among other powers granted cities adopting charters under the Home Rule Amendment, provides as follows:

"* * * to provide for the improvement of any public street, alleys, highways, avenues, or boulevards by paving, raising, grading, filling or otherwise improving the same and to charge the cost of making such improvement against the abutting property, by fixing a lien against the same, and a personal charge against the owner thereof according to an assessment specially levied therefor in an amount not to exceed the special benefit any such property received in enhanced value by reason of making such improvement, and to provide for the issuance of assignable certificates covering the payments for said cost, provided that the charter shall apportion the cost to be paid by the property owners and the amount to be paid by the city, * *"

This provision applies to all home rule cities, and is therefore a general law of this state. Under its provisions the City of Dallas is authorized to improve its streets and to charge the cost of making such improvements against the abutting property by fixing a lien against the same, and a personal charge against the owner. The conferring by the Legislature of this express authority to home rule cities of necessity clothed such cities with such incidental powers as were essential and necessary to make effective the power thus granted. It will be observed that the provisions of section 16, article 1175, do not attempt to fix the specific time when the lien authorized to be placed against the abutting property shall become effective. In order to carry out the express power granted,—that is, to fix a lien against abutting property, it was, of course, necessary that some definite time be fixed at which such lien should become operative.

■ It is clear the Legislature intended to confer the power upon the cities to create a lien for these improvements, and since the Legislature did not fix a time at which such lien

should become operative, the power to fix the time such lien should become effective was necessarily conferred by implication upon the cities themselves. It is a cardinal rule of statutory construction that the courts must presume that the Legislature, in the enactment of a law, always intends to confer all such incidental powers as are necessary to render effective the powers expressly granted. Brown v. Clark, 102 Texas, 323, 116 S. W., 360; 36 Cyc., p. 1113.

Section 16, above quoted, does not prescribe any of the details by which home rule cities may fix the liens for such improvements. In order that said liens may be valid, it is, of course, necessary that a proper hearing as to benefits be given the owners of property. Cities are empowered to take such steps as may be essential to fix liens in harmony with the provisions of the Constitution and statutes of the state.

Plaintiffs in error rely upon the case of Johnson v. City of Fort Worth, 299 S. W., 883 (Com. App.), to sustain the contention that no lien was fixed against their property until the passage of the ordinance levying the assessment. A fair construction of the opinion in the above case, we think, sustains the validity of the provision of the charter which is assailed in this case. In the Fort Worth case it was held that the paving lien became operative at the date of the passage of the ordinance levying the assessment; but this holding was based upon the express provision of section 9 of the charter of the City of Fort Worth, which provides that the lien should be fixed by the passage of the ordinance levying the assessment. It was impliedly held in that case that the City of Fort Worth was clothed with power to fix by charter provision the effective date of the paving lien.

We think the provision in subdivision (i), section 1, article 10, of the charter of the City of Dallas, here under consideration, is but the exercise by said city of a power clearly implied by a general and not a special law, in properly carrying into effect certain express powers, and does not contravene the provision of the Constitution which forbids the Legislature from enacting a local or special law creating, extending, or impairing liens. Here the lien was one created under powers expressly and impliedly granted by a general statute of the state.

Plaintiffs in error further urge that the above mentioned clause of the Dallas charter is violative of the provisions of the general laws of Texas contained in articles 1086 to 1105 (b), Revised Statutes, 1925. It is expressly provided in these statutory provisions that they are not applicable to a city which

has not adopted them; and it does not appear that the City of Dallas has ever adopted or accepted them. The mere giving of the option or privilege to the cities of the state of operating under the terms of these statutes cannot be given the effect to bar home rule cities which have not accepted them from exercising powers expressly granted by the terms of article 1175, above referred to. Riley v. Town of Trenton, 184 S. W., 344 (Writ Refused); Childress v. Carwile (Com. App.), 235 S. W., 543.

■ Plaintiffs in error also contend that the fixing of the lien at a date prior to the hearing of the assessment for benefits results in the taking of their property without due process of law, in contravention of both the State and Federal Constitutions. We think this does not follow, as no lien can be fixed or become effective at all until it has been determined at a proper hearing that the property of plaintiffs in error has been benefited at least to the extent of the amount of the proposed assessment.

■ The provision fixing a date when a paving lien shall take effect is not of the nature of a final process, and does not contemplate the taking of the owner's property without due process of law. His right to defeat the assessment upon a hearing for want of benefits is unimpaired. Therefore he is afforded due process of law within the meaning of both the Federal and State Constitutions. Baugh v. LaGrange, 161 Ga., 80; Arthur v. State, 146 Ga., 827, 92 S. E., 637. Neither can one who has purchased the property of plaintiffs in error sustain any injury by reason of the paving lien relating back to the date of the passage of the original resolution ordering the street improvement in front of this property. Such purchaser necessarily acquires the same with notice that a lien will be fixed against such property for the cost of the proposed improvements, to the extent that said property is benefited by reason thereof. In some jurisdictions it is held that such paving liens relate back to the date of the resolutions ordering the improvements, even though the law under which such improvements were made contained no relating back provision. Hester v. Thompson, Coll. of Taxes of Brockton, 217 Mass., 422, 105 N. E., 631; Gomeringer v. McAbee, 129 Md., 557, 99 Atl., 787.

From what we have said it necessarily follows that the judgment of the Court of Civil Appeals, upholding the validity of the paving lien, must be affirmed,—and it is so ordered.